IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RAMANANDA ELSEY,

        Plaintiff,

vs.                                          CASE NO. 1:17-cv-219-MW-GRJ

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Acting

Commissioner of Social Security (the "Commissioner") denying Plaintiff's

application for Supplemental Security Income pursuant to the Social

Security Act. ECF No. 1. The Commissioner has answered, and both

parties have filed briefs outlining their respective positions. ECF Nos. 12,

17, 18. For the reasons discussed below, it is recommended that the

Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff's December 2013 application alleged disability beginning

January 1, 2012, due to degenerative disc disease with paracentral disc

extrusion. R. 207-12.  His application was denied initially and upon

reconsideration. R. 111-13, 120-24.  Following a hearing, an administrative

law judge ("ALJ") issued an unfavorable decision, finding that Plaintiff was capable of performing a reduced range of work at the sedentary level of exertion. R. 17-28. The Appeals Council denied review. R. 1-6. Plaintiff then filed the instant appeal. ECF No. 1. Plaintiff argues that the ALJ's decision is not supported by substantial evidence because Plaintiff is incapable of full-time work even at the sedentary level due to pain. ECF No. 17.

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2012). Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds

that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen,* 793 F.2d 1177 (11th Cir. 1986) (finding that the court must also consider evidence detracting from evidence on which the Commissioner relied). However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42

U.S.C. §§ 416(I), 423(d)(1) (2012); 20 C.F.R. § 404.1505 (2015).[1] The

impairment must be severe, making Plaintiff unable to do her previous

work, or any other substantial gainful activity which exists in the national

economy. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The ALJ must follow five steps in evaluating a claim of disability. 20

C.F.R. § 404.1520. The claimant has the burden of proving the existence of

a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936

F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a

substantial gainful activity, he is not disabled. § 404.1520(b). Second, if a

claimant does not have any impairment or combination of impairments

which significantly limit his physical or mental ability to do basic work

activities, then he does not have a severe impairment and is not disabled. §

404.1520(c). Third, if a claimant's impairments meet or equal an

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

disabled. § 404.1520(d). Fourth, if a claimant's impairments do not prevent

him from doing past relevant work, he is not disabled. §§ 404.1520(e)–(f).

Fifth, if a claimant's impairments (considering her RFC, age, education, and

---

[1] All further references to 20 C.F.R. will be to the 2015 version, unless otherwise
specified.

past work) prevent him from doing other work that exists in the national economy, then he is disabled. § 404.1520(g).

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2.[2]

## III.  SUMMARY OF THE RECORD

### A.  ALJ's Decision

The ALJ determined that Plaintiff has the severe impairments of lumbar osteoarthritis and degenerative disc disease, and degenerative joint disease of the left knee status post ACL repair.  R. 19.  The ALJ determined that Plaintiff's medically determinable impairment of anxiety-

---

[2] In *Doughty* the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.

> *Id.* (internal citations omitted).

related disorders does not cause more than minimal limitation in his ability to perform basic mental work activities and is therefore non-severe. *Id.* Plaintiff does not have an impairment or combination of impairments that meets or equals the listings. R. 20. The ALJ determined that Plaintiff has the RFC for sedentary work, with additional exertional, postural, and environmental limitations. *Id.* The ALJ concluded that Plaintiff's subjective complaints regarding the limiting effects of his impairments were not entirely consistent with the objective medical evidence and other evidence of record, including evidence that Plaintiff engaged in varied activities. R. 22-26. To support this finding, the ALJ extensively discussed the relevant medical evidence, including the opinion of a state agency medical consultant who opined that Plaintiff had the capacity for work at the light exertional level, with postural and environmental limitations. The ALJ "resolved all doubts in the claimant's favor" in assessing a more-restrictive RFC. R. 26.

Plaintiff had no past relevant work. Based upon the testimony of a VE, the ALJ determined that in light of Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as addresser, document

preparer, and call out operator.  The ALJ therefore found that Plaintiff was
not disabled.  R. 26-28.

## B.  Medical and Opinion Evidence

Plaintiff's appeal focuses on the asserted limiting effects of his pain.
He does not contend that the ALJ erred in finding that his mental
impairment is non-severe.  *See* ECF No. 17.  Accordingly, the Court's
summary of the evidence focuses on Plaintiff's physical impairments and
complaints of pain. The records that are relevant to Plaintiff's claims may
be summarized as follows.

Plaintiff has a history of back problems for which he received
treatment at UF Community Health and Family Medicine and with the Paint
Management Clinic from December 2013 through January 2014.  Clinic
notes reflect that he received some benefit from his treatment, but that he
was non-compliant as he took increased dosages of his narcotic pain
medications.  R. 400-63.

The ALJ observed that Plaintiff's clinical examinations and diagnostic
studies "were not entirely impressive."  R. 24.  A December 2013 MRI of
the lumbar spine revealed a left paracentral disc protrusion at L4-L5 with
mild bilateral facet arthropathy, causing mild left lateral recess narrowing
with minimal left neural foraminal compromise and broad-based disc bulge

at L3-L4, with mild bilateral facet arthropathy, without stenosis. R. 416-27.

A January 2014 examination noted diffuse tenderness and pain along the

neck/upper mid-back and lower back.  There was no swelling or edema.

Plaintiff had various osteoarthritic changes and various areas of spasms,

but was neurologically intact.  His reflexes, coordination, and gait were

normal.  R. 400-463.

In December 2013, February 2014 at a pain management follow-up

with Dr. Tenley Noone and Dr. Siegfried Schmidt, Plaintiff reported that he

was taking Trazodone, Oxycodone, and Lyrica.  His girlfriend reported that

Plaintiff was "doing significantly more around the house and also started

some outside activities and is planning some agricultural activities,"

including beekeeping.  She reported that Plaintiff's medication enabled him

to do work around the house and yard, and that he was swimming and

participating in physical therapy.  Under "aberrant behaviors," the notes

reflect that Plaintiff increases his medication dose without authorization and

a urine drug test was positive for cannabis. R. 404-05.   It was

recommended that Plaintiff be treated conservatively, and his Lyrica and

Trazodone dosages were adjusted.  He was advised to start an exercise

and stretching program, and to continue with physical therapy.  Opioids

would only be continued if Plaintiff started and maintained a job or

volunteer work.  Plaintiff reported that he knew people who would give him a clerical job.  R. 413-14.

Plaintiff saw Dr. Kodsi at UF Health for medication refills in April 2014.  Plaintiff requested additional Lyrica, but the notes reflect that when Dr. Kodsi wrote the prescription the pharmacy advised that a prescription for Lyrica had been called in by another practitioner.  Plaintiff also stated that he was receiving Lyrica directly from the manufacturer for free.  The notes reflect that Plaintiff had recently been discharged from the Pain Management Clinic for non-compliance with a treatment plan.  He also was paying $250 a visit with Dr. Sacher in Ocala, from whom he was receiving morphine.  Dr. Kodsi noted "it appears as if the patient may be exhibiting drug seeking behavior.  His explanations are difficult to follow and inconsistencies are apparent in the patient's stories.  The patient also seems willing to pay large sums of money for appointments with Pain Management, but states that he cannot afford other forms of therapy, such as injections/CBT."  Dr. Kodsi did refill Plaintiff's Trazodone.  R. 477-79.

Progress notes in May and June 2014 from Mark Sacher, D.O., disclose that Plaintiff had tenderness of the cervical, thoracic, and lumbar spine.  There was some sensory loss of the left lower extremity, but no motor loss.  There was pain with straight leg raising.  Plaintiff's treatment

plan included swimming, rest, hot water therapy, and massage to reduce

pain, with plans to decrease medication as Plaintiff was able to tolerate.

Dr. Sacher prescribed Dilaudid and Methadone.  R. 485-503.

In January 2015, an x-ray showed degenerative changes of the lower

lumbar spine.  R. 530-31.  An MRI in August 2015 demonstrated slightly

increased size of a broad-based disc bulge with small superimposed

central extrusion at L3-L4 without spinal canal narrowing.  There was

slightly decreased volume of a broad-based disc protrusion at L4-L5

causing mild left lateral recess and left neural foraminal narrowing, and mild

multilevel facet joint arthropathy.  R. 536-37.

Plaintiff sought treatment at the Acorn Clinic at various times,

including for pain management.  In July 2015, after returning from a month-

long trip to India where he sought alternative treatment, Plaintiff reported

that he was not taking pain medication.  He reported difficulty sleeping.

Plaintiff was trying other treatments including Chinese medicine,

chiropractic care, massage, yoga, and swimming.  Plaintiff reported that he

had been told that he needed two-level fusion of L5-S1 and L4-L5, but a

surgeon advised against it due to his young age and the potential for

complications.  The treatment plan recommended by ARNP Shawna Doran

included topical medication, acupuncture, massage, exercise, and

nutritional supplements.  ARNP Doran noted that she would ask Dr.

Leepack about ordering hydrocodone.  R. 567-68.

In September 2015, Dr. Decker with UF Health Pain Management

examined Plaintiff.  Plaintiff had full 5/5 strength bilaterally in the lower

extremities, and deep tendon reflexes were intact.  Dr. Decker diagnosed

bilateral low back pain with left-sided sciatica, numbness, and tingling of

the left leg, lumbar radiculopathy, and neuropathic pain.  Plaintiff reported

that he was doing alternative treatments.  The treatment plan included

continuing with physical therapy and NSAIDS.  R. 551-54.

In February 2016, Dr. Decker noted that Plaintiff was advised to begin

interventional and physical therapy.  Examination revealed tenderness of

the left buttocks, but not the spine.  Range of motion of the thoracic and

lumbar spine were within normal limits.  Plaintiff had full 5/5 strength,

completed toe and heel walk normally, had normal sensation, and there

was no evidence of erythema.  Dr. Decker diagnosed bilateral low back

pain with left-sided sciatica and neuropathic pain.  R. 548-51.

Plaintiff was also examined by a neurosurgeon, Dr. Michael

MacMillan, in February 2016.  Plaintiff complained of left leg numbness and

low back pain which was constant but not increasing.  Dr. MacMillan

assessed that Plaintiff "has mechanical issue in his back but at this point right now the condition does warrant a two-level lumbar fusion." R. 545-47.

ARNP Doran examined Plaintiff on February 16, 2016. Her notes reflect that Plaintiff was at the clinic "to get help with his disability." Plaintiff exhibited lower back pain and tenderness, with positive leg raise bilaterally, the left worse than the right. There was decreased range of motion of the back and he was tender to palpation. There was no palpable spasm. Plaintiff had decreased left leg strength. ARNP Doran recommended nutritional supplements and continuing on Lyrica and Tramadol as they appeared to help. R. 568-70.

Doran saw Plaintiff again on February 23, 2016. She noted that Plaintiff had tried many treatments and "is now trying to get disability due to his inability to stand, sit, walk more than a short time." Plaintiff described disabling pain; examination revealed decreased range of motion, tenderness, no palpable spasm, positive straight leg raise bilaterally, left leg weaker than right leg. Doran's plan included to ask Dr. Ryan if he would read and sign a disability form and a form for Lyrica, and for Plaintiff to continue with his disability application. R. 571-73.

On February 24, 2016, Plaintiff saw Dr. Dale Ryan. The notes do not reflect that Dr. Ryan performed any musculoskeletal or neurological

examination.  Plaintiff stated that he had been told in the past that surgery

was not indicated.  Plaintiff reported that Lyrica helped his discomfort.  Dr.

Ryan's treatment plan included prescribing Lyrica, "agree with disability

determination," and advising Plaintiff to follow up with the back surgeon to

determine if and when he should have surgery.  R. 574.

The relevant opinion evidence includes a February 2016 functional

capacity evaluation performed by Plaintiff's physical therapist at

Southeastern Integrated Medical ("SIMED"), David Ochs, PT.  The

assessment concluded that Plaintiff demonstrated a functional ability

between the physical demand levels (PDL) of "sedentary and medium" with

pain levels up to 9/10.  An Oswestry pain questionnaire yielded a score of

84%, reflecting that the subject was either "bed bound or exaggerated

symptoms."  Plaintiff was assessed as having limited tolerances to sitting,

standing, and walking for periods greater than 30 minutes each.  It was

recommended that Plaintiff "would best be suited for employment in a

SEDENTARY PDL with part-time hours and flexibility to be able to

transition from sit to stand as needed", with an ergonomic station.  R. 588-

89.

ARNP Doran provided an RFC assessment, also signed by Dr. Dale

Ryan, restricting Plaintiff to sitting, standing, and walking no more than 30

minutes at one time for a total of 1 hour per day, and otherwise deferring to

the SIMED functional capacity report.  R. 595-96.

A state agency medical consultant, Dr. Sharmishtha Desai, reviewed

the record and concluded that Plaintiff had the capacity for light work with

postural and environmental limitations.  R. 97-108.

### C. Hearing Testimony

Plaintiff was 38 years old at the time of the hearing.  He is single,

lives alone, and has two years of college education.  Plaintiff testified that

he is unable to work due to ruptured discs in his lower back with extreme

numbness and tingling from his left buttock to his foot.  He stated that it is

extremely painful to sit or stand.  Plaintiff also suffered a torn meniscus

while playing volleyball in 2012, for which he had surgery.  Plaintiff's

treatment has included injections, massage, acupuncture, and other holistic

therapies.  He has also been on pain management for several years.

Plaintiff testified that he was told a double fusion would be necessary, but

that he should wait as long as possible due to his age and possible

complications.  R. 52-55.

Plaintiff testified that he had to stop physical therapy because his

condition became worse after trying Pilates.  His last injection was four or

five months prior to the hearing, but he had a bad reaction to it.  Plaintiff

stated that he can only stand for four to five minutes before his left leg goes numb, and it sometimes causes him to fall. He can only sit for 10 to 20 minutes before needing to lie down. Plaintiff believes he had EMG studies, but there were no specific findings. He cannot lift more than a few pounds. R. 56-61.

Plaintiff's typical day includes making coffee in the morning and watching TV in bed. His mother lives nearby and brings him one meal per day. He sometimes goes to his mother's home for dinner, but has to lay down on the floor. His mother helps with housework, and Plaintiff sometimes tries to sweep and do his own dishes. He testified that he used to be very active but now cannot walk for more than five minutes or a block. Plaintiff has friends who visit him. His medications include Lyrica, trazodone, and a muscle relaxer, tizanidine. Plaintiff testified that he stopped taking the Lyrica for a time to see if he could go without medication. He receives assistance for his medication through the Acorn Clinic. Plaintiff testified that he primarily sees ARNP Doran at the clinic, and was unsure whether he had seen Dr. Ryan more than once. R. 62-66, 78.

The ALJ posed a hypothetical to the VE that assumed an individual of the same age and education as Plaintiff with the RFC for sedentary work

with certain postural, exertional, and environmental limitations, including

the limitation that the person required an alternate sit/stand option every

20-30 minutes for five to 10 minutes at the workstation.  The VE identified

jobs that such a person could perform, including addresser, document

preparer, and call-out operator.  With the additional limitation that the

person would be off-task 15 percent or more of the workday due to a

combination of symptoms including pain, the VE testified that the person

would be unemployable.  R. 82-84.

## IV.  DISCUSSION

### ALJ's Evaluation of Subjective Complaints and RFC Determination

Plaintiff argues that substantial evidence does not support the ALJ's

decision with respect to the limiting effects of Plaintiff's pain.  Plaintiff

contends that his pain precludes full-time work even at the sedentary level.

Plaintiff argues that his physical therapist, ARNP Doran, and treating

physician Dr. Ryan all found that he could not work full-time, and that "no

one but the ALJ, the person with the least education and experience

regarding physical therapy for medicine, believes that [Plaintiff] is capable

of working full-time."  He contends that even if he could be present in the

work-place full-time, his need to lie down or walk around for five minutes

out of every 30 to achieve pain relief would preclude maintaining employment.  ECF No. 17.

To establish disability on the basis of subjective complaints, Plaintiff must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 404.1520(c); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("Dyer failed to set forth the requisite objective medical evidence that confirmed the severity of the alleged pain . . . or that the objectively determined medical conditions are of such a severity that they can be reasonably expected to give rise to the alleged pain."); *Wilson*, 284 F.3d at 1225-26; *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991).  In analyzing the evidence, the focus is on how an impairment affects Plaintiff's ability to work, and not on the impairment itself. *See* 20 C.F.R. § 404.1521; *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (severity of impairments must be measured in terms of their effect on the ability to work, not from purely medical standards of bodily perfection or normality).

The ALJ assessed Plaintiff's subjective complaints consistently with

the framework established under Social Security Regulation ("SSR") 16-3p.

*See* R. 21.  As the Eleventh Circuit has explained:

> SSR 16-3p rescinded a previous Social Security ruling that concerned
> the credibility of a claimant. SSR 16-3p, 82 Fed. Reg. 49,462, 49,463
> (Oct. 25, 2017). SSR 16-3p removed the use of the term "credibility"
> from its sub-regulatory policy because the Social Security
> Administration's (SSA) regulations did not use the term. *Id.* SSR 16-3p
> clarified that "subjective symptom evaluation is not an examination of an
> individual's character" and that a two-step evaluation process must be
> used. *Id.* Step one is to determine whether the individual has a medically
> determinable impairment that could reasonably be expected to produce
> the alleged symptoms. *Id.* at 49,463-64. Step two is to evaluate the
> intensity and persistence of an individual's symptoms, such as pain, and
> determine the extent to which an individual's symptoms limit her ability
> to perform work-related activities. *Id.* at 49,464-66. The Commission
> stated:
>
> > Consistent with our regulations, we instruct our adjudicators to
> > consider all of the evidence in an individual's record when they
> > evaluate the intensity and persistence of symptoms after they
> > find that the individual has a medically determinable
> > impairment(s) that could reasonably be expected to produce
> > those symptoms. We evaluate the intensity and persistence of
> > an individual's symptoms so we can determine how symptoms
> > limit ability to perform work-related activities for an adult . . . with
> > a title XVI disability claim.

*Id.* at 49,463.  *Contreras-Zambrano v. Social Sec. Adm.*, 724 Fed.Appx.

700, 702-03 (11th Cir. 2018).[1]

---

[1] In October 2017, the SSA republished SSR 16-3p, clarifying that it was
applicable beginning on March 28, 2016. *Id.* at 49,462, 49,468. The
republished version noted that the SSA's adjudicators would apply SSR

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  R. 22.  The ALJ then conducted a thorough review of the record evidence.  First, the ALJ observed that the Plaintiff's clinical exams and diagnostic studies were "not entirely impressive".  As summarized above, the diagnostic studies support the existence of disc abnormalities at L4-L5 and L3-L4, but Plaintiff's examinations reflected that he was intact neurologically and had full strength and normal reflexes, coordination, and gait.  R. 24; *see* R. 400-63, 548-5, 551-54.  Plaintiff exhibited sensory loss of the left lower extremity but no motor loss. *See id.*  The ALJ observed that his condition had been treated conservatively and primarily with medication and injections.  The

16-3p to all determinations made on or after March 28, 2016, and that the SSA expected federal courts to use the version of the rule that was in effect at the time the SSA issued the decision under review. *Id.* at 49,468 n.27. The republished version further noted that the regulations regarding the evaluation of symptoms were unchanged.  The decision under review in this case was made on August 17, 2016, and therefore SSR 16-3p is applicable. *See Contreras-Zambrano*, 724 Fed.Appx. at 702-03.

ALJ noted that Plaintiff had recently been recommended to undergo surgery, but that he had been provided with other options for treatment, including physical therapy.  R. 24; *see* R. 413-14.  The ALJ's determination that Plaintiff's treatment was conservative in nature is well-supported in the record.

The ALJ was persuaded that Plaintiff's varied activities, as documented in the records, were inconsistent with his allegation of disabling pain, and pointed to substantial record evidence to support that conclusion.  R. 25.   Plaintiff related that he was seeking volunteer or clerical work. R. 413-14.  His activities included swimming, and in January 2014 he and his girlfriend reported that he was doing more around the house, doing outside activities, and was exploring agricultural activities such as beekeeping. R. 404-05.  The record reflects that Plaintiff was able to travel to India, and that he afterwards stopped taking pain medication for a time.  R. 567-68.

In Plaintiff's February 2016 functional capacity evaluation, he reported that his daily routine included reading, short frequent walks, and washing dishes.  R. 589.  In June 2016, shortly before his disability hearing, Plaintiff related that he was continuing to try to swim and walk.  R.  629.  The ALJ also pointed to evidence suggesting that Plaintiff's motivation was

to attain disability benefits and not to work, including his statements to

ARNP Doran and the results of the Oswestry pain assessment which

reflected that either that Plaintiff was bed-bound (which is not reflected in

the record) or that he was displaying exaggerated symptoms.  R. 25; *see*

R. 588-89.

Lastly, the ALJ considered the available opinion evidence.  The ALJ

afforded the February 2016 SIMED assessment, limiting Plaintiff to part-

time work, little weight because it was not an opinion by a medical doctor

and was inconsistent with other evidence in the record.  As support, the

ALJ pointed to Dr. Decker's February 2016 examination findings which

revealed tenderness of the left buttocks, but not the spine, normal range of

motion, full 5/5 strength, normal toe-and-heel walk, and normal sensation.

R. 25, *see* R. 548-51.  The ALJ afforded little weight to the

contemporaneous February 2016 RFC provided by ARNP Doran, which

restricted Plaintiff to sitting, standing, and walking no more than 30 minutes

at one time for a total of 1 hour per day, and which also deferred to the

SIMED assessment.  R. 26.  The ALJ did so because Doran is an ARNP

and not a medical doctor, and although Dr. Ryan also signed the report he

did not examine Plaintiff and there were no supporting clinical findings.  *Id.;*

*see* R. 595-96.  The ALJ also observed that Doran had encouraged Plaintiff

to continue with his disability proceeding, which demonstrated some

possible bias in completing the medical source statement.  R. 26.  While

concluding that these opinions were unsupported, the ALJ similarly

afforded limited weight to the state agency consultant's opinion that Plaintiff

had the capacity for light work with certain limitations.  The ALJ instead

resolved any doubts in Plaintiff's favor, in light of the February 2016

recommendation for fusion surgery, and reduced Plaintiff's RFC to a limited

range of sedentary work.  R. 26.

  To the extent that Plaintiff's argument may be construed to suggest

that the ALJ violated the treating physician rule in rejecting the form RFC

signed by Dr. Ryan, his argument is unavailing.  It is well-established that

substantial or considerable weight must be given to the opinion, diagnosis

and medical evidence of a treating physician unless "good cause" is shown

to the contrary.[1]  If a treating physician's opinion on the nature and severity

of a claimant's impairments is well-supported by medically acceptable

clinical and laboratory diagnostic techniques, and is not inconsistent with

the other substantial evidence in the record, the ALJ must give it controlling

---

[1] *Crawford v. Commissioner of Social Security*, 363 F. 3d 1155, 1159 (11th Cir. 2004)
(citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)); 20 C.F.R. §
404.1527(d).

weight.[2]  To determine the weight to be accorded a treating physician's

opinion, the ALJ must consider the factors set forth in 20 C.F.R. §

404.1527(d), which include the length of treatment, frequency of

examination, nature and extent of the treatment relationship, support of

opinion afforded by medical evidence, consistency of opinion with the

records as a whole, and specialization of the treating physician.

While there is no requirement for the ALJ to discuss every medical

record in the administrative record, he is "required to state with particularity

the weight he gave the different medical opinions and the reasons

therefor."[3]  Additionally, because an ALJ is not permitted to substitute his

judgment for that of the medical experts,[4] the ALJ cannot reject portions of

a medical opinion without providing an explanation for such a decision.[5]

Where an ALJ fails to sufficiently explain how he reached his decision, the

Court may not speculate.[6]

---

[2] 20 C.F.R. § 404.1527(d)(2).

[3] *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990)(noting "the ALJ should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence").

[4] *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986); *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982).

[5] *Morrison v. Barnhart*, 278 F. Supp. 2d 1331, 1337 (M.D. Fla. 2003).

[6] *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

Here, the ALJ did not err in affording the opinion only limited weight. Dr. Ryan's notes do not reflect that he performed any examination of Plaintiff that would support the limitation to part-time work assessed in the RFC.  Although ARNP Doran treated Plaintiff, a nurse practitioner (ARNP) does not qualify as an "acceptable medical source," 20 C.F.R. § 404.1513(a), and cannot establish the existence of a medically determinable impairment. *See* SSR 06–03p.  The ALJ did take ARNP Doran's opinion into account, but concluded that her assessment of Plaintiff's ability to sit, stand, or walk no more than 30 minutes at one time for a total of 1 hour per day was unsupported by any clinical findings and inconsistent with the other evidence.  That determination is supported by substantial evidence, including the contemporaneous examination by Dr. Decker which reflected largely normal findings.  R. 548-51.

With regard to the ALJ's RFC, Plaintiff contends that even if he can be present for an eight-hour workday, his need for 5 minutes out of every 30 to lie down or walk around precludes maintaining employment.  But Plaintiff points to no medical evidence that supports this requirement.  As the Commissioner correctly points out, the ALJ is not required to include findings in the hypothetical that are unsupported in the record.  *See Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004);

*Wolfe v. Chater,* 86 F.3d 1072, 1078 (11th Cir. 1996).

Accordingly, on this record, the undersigned concludes that the ALJ properly evaluated Plaintiff's subjective complaints of pain and that the ALJ's RFC, finding that Plaintiff is capable of a reduced range of sedentary work, is supported by substantial evidence.

## RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida, on the 20th of August 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**